IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY S. MITCHELL, | ) | CASE NO. 5:15 CV 974 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Larry S. Mitchell under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his applications

for disability insurance benefits and supplemental security income[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4]   Under my initial[5] and

---

[1] ECF # 18. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Mitchell, who was 41 years old at the time of the administrative hearing,[11] has a high school education[12] and lives alone.[13] He was previously employed as a construction and masonry laborer from 1998-2009.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Mitchell had the following severe impairments: pulmonary sarcoidosis, major depressive disorder, social anxiety disorder, posttraumatic stress disorder, obsessive compulsive disorder, chronic kidney disease, cervical disc disease, history of left elbow dislocation and

---

[6] ECF # 15.

[7] ECF # 26 (Commissioner's brief); ECF # 19 (Mitchell's brief).

[8] ECF # 26-1 (Commissioner's charts); ECF # 19-1 (Mitchell's charts).

[9] ECF # 19-1 (Mitchell's fact sheet).

[10] ECF # 32.

[11] ECF #19-1 at 1.

[12] Transcript ("Tr.") at 44.

[13] Tr. at 58.

[14] Tr. at 45-46.

surgical repair, right rotator cuff tendinitis, history of testicular cancer and AC joint osteoarthritis (20 CFR 404.1520(c) and 416.920(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Mitchell's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of  light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch and crawl. He can frequently reach and handle with his left upper lower extremity. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness and humidity.  He must avoid concentrated exposure to fumes, odors, dust, gasses, or poor ventilation.  He must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. The claimant can understand, remember and carry out simple instructions and perform, simple routine tasks (DOT reasoning levels 1-3). The claimant can perform low stress work defined as work not subjecting him to strict quotas or fast-paced high production demands or work not requiring negotiation, arbitration, confrontation, directing the work of others or being responsible for the safety of others.  He requires a relatively static work place with infrequent well explained changes. The claimant can have superficial and occasional interaction contact with the public and occasional interaction with his coworkers.[16]

Given that residual functional capacity, the ALJ found Mitchell incapable of performing his past relevant work as construction worker.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[15] Tr. at 20.

[16] *Id.* at 22.

determined that a significant number of jobs existed locally and nationally that Mitchell could perform.[17] The ALJ, therefore, found Mitchell not under a disability.[18]

**B.    Issues on judicial review**

Mitchell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Mitchell presents the following issues for judicial review:

- Whether the ALJ's decision is supported by substantial evidence in the case record.

- Whether the ALJ violated the treating physician rules.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must remanded.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on

---

[17] *Id*. at 26.

[18] *Id*. at 27.

review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.   *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable

---

[22] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). [Plaintiff's last name only] filed only an application for supplemental security income benefits.

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

-6-

clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such

supporting evidence exists, the Court will review the administrative record as a whole and

may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating

source rule in the regulations with particular emphasis on the requirement that the agency

"give good reasons" for not affording controlling weight to a treating physician's opinion in

the context of a disability determination.[31] The court noted that the regulation expressly

contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

---

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40]
*Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion
should receive controlling weight.[43] The opinion must receive controlling weight if
(1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent
with other substantial evidence in the administrative record.[44] These factors are expressly set
out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's
opinion controlling weight will the analysis proceed to what weight the opinion should
receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[45] The
treating source's non-controlling status notwithstanding, "there remains a presumption, albeit
a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into
one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[40] *Rogers*, 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned

the opinion of the treating physician little weight and explained that finding by the secondary

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

and the treatment reports.[50] The court concluded that the ALJ failed to provide "good

reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail
> to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's
> treatment relationship with Gayheart, as well as alleged internal
> inconsistencies between the doctor's opinions and portions of her reports. But
> these factors are properly applied only after the ALJ has determined that a
> treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's

regulations recognizes a rebuttable presumption that a treating source's opinion should

receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each

treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B.     Application of standards**

This case again raises the issue of whether the ALJ properly analyzed the opinions of two treating sources as part of a decision process by which these treating sources were assigned lesser weight than the opinion of only a reviewing source who did not consider the entire record.  For the reasons stated below, I conclude that the ALJ's analysis here did not yield a good reason for downgrading the opinions at issue, and so the matter must be remanded.

_____

[66] *Id.* at 409-10.

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

In this case, Mitchell submitted functional opinions from both Dr. Sameera Khan, M.D., his treating psychiatrist, and Dr. Charles Fuenning, M.D., his treating pulmonologist.[70] In giving both opinions "some weight" the ALJ briefly summarized the opinions themselves and then essentially discounted each of them for a lack of specificity.[71]  As to Dr. Fuenning, the ALJ in particular observed that "because no specific standing/walking limitations were imposed (besides no more than two consecutive hours standing) and no lifting limitations were assessed, this recommendation is consistent with the light residual functional capacity described above."[72]

Dr. Kahn first completed a medical source opinion in January 2012, which the ALJ concluded set forth "no specific limitations" and so this opinion was given "some weight," with the ALJ also stating that the "identified symptoms" noted in this opinion were accommodated in the RFC.[73]  Dr. Kahn's second opinion, in October, 2012, was also signed by Charles Gould, a social worker.[74]  But, despite this being a submission jointly signed by both Dr. Khan and Gould,[75] the ALJ assessed the opinion as being entirely from Gould, and

---

[70] Tr. at 25.

[71] *Id*.

[72] *Id*.

[73] *Id.*

[74] *Id*. at 653-55.

[75] *Id*. at 655.

-14-

downgraded it to only "little weight" for reasons including the fact that "Mr. Gould is not an acceptable medical source."[76]

As I recently held in *Pater v. Commissioner of Social Security,*[77] an opinion signed by both a medically acceptable source, such as a physician, and a non-acceptable source, such as a social worker, may be properly given controlling weight as a treating source opinion if the signing physician personally qualifies as a treating source.[78]  Where an ALJ confronted by such an opinion bearing the signatures of both an acceptable and non-acceptable source simply declares the non-acceptable source the sole "author" of that opinion, and makes no attempt to ascertain whether the acceptable source qualifies as a "treating source," the ALJ has failed to evaluate that opinion under the proper standard.[79]

Here, the ALJ made no specific finding as to whether Dr. Khan was a treating source, although the record shows that Mitchell received treatment from Dr. Kahn 17 times from June 29, 2011 to August 29, 2013, and received treatment from Dr. Kahn's therapist, Mr. Gould, on another 21 occasions, for a total of 38 treatment visits by this team over two years.[80]  As I observed in *Pater*, this form of treatment whereby the psychologist or

---

[76] *Id*. at 25.

[77]  *Pater v. Commissioner of Social Security*, 2016 WL 3477220 (N.D. Ohio June 27, 2016).

[78] *Id.* at *6 (citation omitted).

[79] *Id*. at *7 (citation omitted).

[80] *See*, ECF # 19 at 7-9 (citing record).

-15-

psychiatrist is the lead member of a professional team delivering service to the patient is more and more common today as opposed to the model of service being provided by a single Marcus Welby-type physician acting alone.[81] Thus, an opinion jointly prepared and signed by both the psychologist and a social worker who have collectively treated the patient, under the direction of the acceptable medical source, for a period of time long enough for the acceptable source to qualify as a treating source, is, by law, an opinion from a treating source, entitled to be fully considered as such.[82]

Here, the ALJ's erroneous description of the October, 2012 joint opinion as one authored only by Gould, and his failure to recognize Dr. Kahn's two year relationship with Mitchell as a treating source relationship, led to the ALJ's failure to evaluate the October, 2012  joint opinion as one from a treating source and so entitled to analysis appropriate to that status.

Further, as to Dr. Fuenning's opinion, Mitchell points out that it specifically stated that Mitchell avoid 'all' exposure to environmental irritants, not that Mitchell avoid "concentrated" exposure to such irritants, as the state agency reviewer opined.[83]  This is critical because the VE testified that if Mitchell should avoid all exposure to such irritants, no jobs would be available.[84] Given that Dr. Fuenning is board certified pulmonologist

---

[81] *Pater*, 2016 WL 3477220, at *6.

[82] *Id*. at *7.

[83] ECF # 19 at 21-22.

[84] Tr. at 75-76.

speaking in his area of specialty, while the state agency reviewers were family practice or internal medicine specialists,[85] and that these reviewers gave their opinions without having seen Dr. Fuenning's opinion,[86] I find that the ALJ has not stated a good reason as to why Dr. Fuenning's functional opinion was given lesser weight than those of the state agency reviewers.[87]

### Conclusion

Accordingly, and for the reasons stated above, I find that the decision of the Commissioner here is not supported by substantial evidence, and so direct that the matter be remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: August 29, 2016                                        s/ William H. Baughman, Jr.
                                                             United States Magistrate Judge

---

[85] *See, id*. at 22 (citing record)

[86] *See, id*. at 20 (citing record).

[87] *Blakely v. Comm'r of Social Security*, 581 F.3d 399,  406 (6th Cir. 2009).

-17-